## MARY HAGERTY v. NATIONAL FUR & TANNING COMPANY.[1]

June 1, 1917.

Nos. 20,343—(119).

**Process — service on foreign corporation doing business in Minnesota.**

> The court was justified in concluding that defendant, a Nebraska corporation, was doing business in this state, and that the agent, upon whom service of summons was made, was then here with full authority to speak and act for the corporation in respect to the contract involved in this action, said contract having been made in this state.

Action in the district court for Martin county to recover $400. The defendant appeared specially and moved to set aside the service of the summons. From an order, Quinn, J., denying the motion, defendant appealed. Affirmed.

*Haycraft & Palmer,* for appellant.

*Albert R. Allen* and *Frank E. Dougherty,* for respondent.

HOLT, J.

This appeal questions the validity of the service of the summons upon the defendant, a foreign corporation. Affidavits on the part of defendant tended to show that it is a Nebraska corporation, there having its officers, property and business; that it employs traveling salesmen, one of whom was F. A. Krueger upon whom the service was made; that said salesmen are employed upon a commission basis to solicit orders for new fur garments and garments to be repaired in this state subject to acceptance or rejection by defendant; that Krueger had no other authority, and that, except as stated, it performs no act within this state, has here no branch house or distributing point, has not ap-

[1] Reported in 162 N. W. 1068.

pointed any agent here for the acceptance of service of process, and has not complied with any law of this state regulating the doing of business here by foreign corporations. Plaintiff's showing was to the effect that in August a traveling salesman of defendant came to plaintiff's residence in Fairmont, this state, and solicited work; that she gave him an otter fur coat to repair; that he took it along with him and gave a receipt which also included a contract insuring her against loss while the coat was in defendant's possession; that in November, 1915, defendant returned the coat by express to plaintiff; that the work was so poorly done that plaintiff sent back the coat to defendant and refused to pay for the repair; that considerable correspondence followed; that on September 6, 1916, the coat was brought to plaintiff's residence by Krueger who attempted to settle with her, finally offering to exchange the coat for another garment of similar kind he had brought with him. Not coming to any agreement the summons was then and there served on Krueger.

Defendant's contention is first, that it was not doing business in the state so that service could be made upon it. Defendant came into court to have the service set aside and should carry the burden of showing that it was not present in the state so as to be subject to service of process. The fair inference from the affidavits produced by it is that, during the time here involved and longer, it kept traveling soliciting agents or salesmen in this state to take orders for its goods, and to make contracts for repairs on fur garments, subject to the approval of the defendant. From the correspondence between the parties it clearly appears that these traveling agents had authority to make tentative contracts in this state, defendant only reserving the right to pass on the sufficiency of the estimate of price for the work made by the agent. From the receipt given and contract made by the agent in this instance, apparently ratified by the manager, the agent seemed to have full authority to close the contract. The transaction with plaintiff cannot be regarded as the only business done by defendant in this state. We must infer that such transactions were numerous, from the fact that these traveling salesmen must have subsisted on the commissions earned, there being no suggestions that they had any other means of support. We do not, however, apprehend that the volume of business is at all

material, nor in what manner it is done, nor how those who transacted the same for defendant were compensated. The fact remains defendant was doing business when it sent its traveling-salesmen into this state and when, in August, 1915, plaintiff at Fairmont made her contract with one of them and delivered to him her coat. It apparently was pursuing the same business when on September 16, 1916, it sent another of its traveling salesmen to her residence with the garment to adjust the claimed liability upon this contract.

In Commercial Mut. Accident Co. v. Davis, 213 U. S. 245, 255, 256, 29 Sup. Ct. 445, 53 L. ed. 782, the service was sustained, made upon an agent sent into the state by the foreign corporation to adjust the loss arising under its insurance policy, where no more evidence of the doing of business was disclosed than that the corporation had other insurance policies outstanding in the state, the court saying: "Upon these policies undoubtedly premiums were paid, and it was the right of the company to investigate losses thereunder, to have an examination of the body of the deceased in proper cases and to do whatever might be necessary to an adjustment or payment of any loss. * * * Previous cases in this court have not defined the extent of the business necessary to the presence of a foreign corporation in the state for the purpose of a valid service; it is sufficient if it is doing business therein."

International Harvester Co. v. Kentucky, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. ed. 1479, goes to the same point, that when a foreign corporation does business by sending soliciting agents into a state, and there so obtains tentative orders for goods that in accepting and filling the same the business becomes entirely interstate in character, still it does not render the corporation immune from the ordinary process of the court.

Whether sending an agent into a state to adjust matters growing out of contracts relating to property there located, constitutes doing business therein, the court in Pennsylvania L. M. F. Ins. Co. v. Meyer, 197 U. S. 407, 415, 25 Sup. Ct. 483, 49 L. ed. 810, says: "A fire insurance company which issues its policies upon real estate and personal property situated in another state is as much engaged in its business when its agents are there under its authority adjusting the losses covered by its policies as it is when engaged in making contracts to take such risks."

The agent Krueger, confessedly defendant's traveling salesman, was sent to make an adjustment of the contract involved in this suit; presumably, when necessary, defendant's agents were dispatched to other patrons in the state if controversies over the goods or work ordered required personal adjustment. See also as to what may be doing business in a state by a foreign corporation: Kirby v. Louismann-Capen Co. 221 Fed. 267.

Our statute (section 7735, subd. 3), provides: "If the defendant be a foreign corporation the summons may be served by delivering a copy to any of its officers or agents within the state." We think the court was justified in concluding that Krueger was an agent of the defendant upon whom service could effectively be made. When served he was in the state, and from what then transpired the inference is persuasive that he had full authority to settle and adjust the claim arising under or out of the contract in suit. In other words he stood in the place of the corporation in respect to the cause of action herein and had full power to speak and act for it.

It has been held by courts of high standing that when an officer or agent of a foreign corporation comes into a state to adjust a controversy, growing out of a contract therein made, he brings the corporation with him to such an extent that, by the service of summons on him, the court acquires jurisdiction over the corporation in an action upon that contract, regardless of whether or not it is doing any other business in the state. Fond du Lac C. & B. Co. v. Henningsen Produce Co. 141 Wis. 70, 73, 123 N. W. 640; Houston v. Filer & Stowell Co. 85 Fed. 757; Premo Specialty Mfg. Co. v. Jersey-Creme Co. 200 Fed. 352, 118 C. C. A. 458, 43 L. R. A. (N. S.) 1015; Norton v. Berlin Iron Bridge Co. 51 N. J. Law, 442, 17 Atl. 1079.

Justice Dodge, speaking for the court in the Wisconsin case says: "A corporation ordinarily acts and moves in the person of some individual, and, when any individual, officer or agent, is, within the authority committed to him, performing an act of the corporation, the latter must be deemed present physically in the person exercising its powers. While the affidavits in this case contradict each other, we see no reason to disagree with the conclusion of the trial court that the treasurer and manager of this corporation was in Fond du Lac negotiating adjust-

ment of corporate liability on the very claim sued in this action. That such function is generally within the authority of such an officer can hardly be doubted, but that it was within Henningsen's authority is confirmed by other facts stated in the affidavits. Obviously had the negotiations proceeded to consummation the corporation would have acted. In other words, Henningsen at that time and for that definite purpose was the corporation, which, therefore, was present in this state. Hence there is no obstacle in the inherent limitations on the powers of the state, or in any prohibition of the Federal Constitution, to the acquisition of jurisdiction by our courts by personal service of their process on the defendant present within our borders."

In our opinion the service was valid, and the order refusing to set it aside is affirmed.

Quinn, J., took no part.