(Decided 30th June, 1880.)

---

The Ben Franklin Insurance Company of Allegheny, Pennsylvania *vs.* James R. Gillett. The Same *vs.* The Same.

*Liability of a Foreign Insurance Company to be sued in this State by a Non-resident—Act of 1876, ch. 106, sec. 30—Correction of a mistake in the Policy of Insurance by a Court of Equity.*

A foreign corporation, an Insurance Company, had an agency in the City of Baltimore in the year 1877, and through said agency insured the property of a non-resident, located in the State of Virginia. The property was afterwards destroyed by fire, but before the loss had occurred, the company withdrew its agency from this State, and ceased to do business in this State. Held:

That the insured, although a non-resident, had the right under the Act of 1876, ch. 106, sec. 30, taken in connection with the previous Acts on the subject, to sue upon said policy in this State.

Ben Franklin Ins. Co., &c. vs. Gillett.

The insured stated to the general agent of the company, who was authorized to make out the policy in question, that the property was leasehold, and requested that it should be so described in the policy; but through the mistake of the agent this was not done, and his omission to do so was not noticed by the insured till after the loss had occurred. On a bill filed by the insured, to have said mistake corrected and the policy reformed, and for the payment of the amount of the loss, it was HELD:

That under the circumstances, the complainant was entitled to have the policy reformed so as to make it express the contract of the parties, and to a decree for the amount of the loss sustained.

APPEALS from the Circuit Court of Baltimore City.

The appellee filed a bill against the appellant, for the correction of a mistake in a policy of insurance, issued to him by the appellant, and the payment of a loss insured against under the policy. The nature of the mistake and the facts of the case are stated in the opinion of the Court. The defendant filed the following plea to the jurisdiction of the Court:

" And the said Ben Franklin Insurance Company of Allegheny, Pennsylvania, submits this, its plea to the jurisdiction of this Honorable Court in the above entitled cause, and says: That this defendant is a corporation duly incorporated under the laws of the State of Pennsylvania, its principal office being located in the City of Allegheny, in said State, where it has always been located; that it has not now, nor at the time of the impetration and suing forth of the writ of subpœna of the complainant in this cause, nor for a long time prior thereto, to wit, since the first day of January, 1878, has it had any office, agent or attorney within the City of Baltimore, or State of Maryland, for the transaction of business, or when or by whom, or upon whom any process whatsoever could or might be lodged, served, or accepted service of, for or on behalf of, or so as to bind this defendant at the suit of said complainant; that the said complainant in this

cause is, and at the time of the filing of the bill of complaint was a citizen of the City of Norfolk, in the State of Virginia; that Jesse K. Hines, Insurance Commissioner of the State of Maryland, who admitted service of the subpœna in this cause, had no authority whatever from this defendant to do so, nor was he in anywise authorized so to do under or in pursuance of any law of the State of Maryland, as this defendant is advised and believes; and that H. G. Stewart, the former agent of this defendant in Baltimore, upon whom it appears by the sheriff's return said subpœna was served, had long previously ceased to be the agent of this defendant, and had no authority whatsoever to act for this defendant in any capacity, nor had the said Stewart any authority, as defendant is advised and believes, under the laws of the State of Maryland, to act for or receive service of subpœna for or on behalf of defendant. And this defendant is ready to verify. Wherefore it prays that the said writ of subpœna may be quashed and the complainant's bill of complaint dismissed with costs."

The complainant demurred to this plea, and the demurrer was sustained by order of the Court, (GILMOR, J.,) passed March 14th, 1879. The first appeal is from the order sustaining the demurrer. The second appeal is from the final decree, which provided for a reformation of the policy of insurance so as to correct the mistake alleged in the bill, and for the payment of the loss alleged to have been sustained.

The cause was argued before BARTOL, C. J., ALVEY, ROBINSON and IRVING, J.

*John M. Carter*, for the appellant.

*James W. Denny*, for the appellee.

ROBINSON, J., delivered the opinion of the Court.

The defendant is a foreign corporation, but was at the time of issuing the policy now in controversy, doing business in this State, and H. G. Stewart & Co. were their general agents for the transaction of insurance business.

The plaintiff is a citizen of Virginia, and the property insured is situate in that State.

The policy was issued in the City of Baltimore on the 20th of June, 1877, and mailed to the plaintiff at Norfolk, Virginia, and the property was destroyed by fire on the 24th March, 1878.

In January, 1878, more than two months before the loss under this policy, the defendant corporation withdrew its agency from this State, and from that time ceased to do business in the State.

Process was served on Jesse K. Hines, Insurance Commissioner for this State, and also on H. G. Stewart, the former agent of the company.

The question presented by the demurrer, is whether the defendant under these circumstances can be sued in this State? And this depends upon the construction of secs. 209 and 211 of ch. 471, Act of 1868, and ch. 358, sec. 33, of the Act of 1872.

The Act of 1868 provides, that any foreign corporation doing business in this State shall be deemed to hold and exercise franchises in this State, and shall be liable to suit in any Courts of the State on any dealing or transaction therein, and that process may be served upon the president, director, manager or other officer of such corporation. Secs. 209 and 210.

Sec. 211 provides that any person *not a resident* of the State may sue any foreign corporation doing business in this State, where the cause of action has arisen or the subject of the action shall be situated in this State, and that process may be served as above stated.

The privilege to sue foreign corporations doing business in this State upon policies issued in the State, is thus ex-

pressly conferred upon *non-residents by the statute.* And had the defendant corporation continued to do business here, the right of the plaintiff to bring this action could not be questioned. The question, however, in this case is whether this right exists after the company has ceased to do business in this State, and after it has withdrawn its agency.

The Act of 1868 provided, as we have seen, that a non-resident might sue a foreign corporation doing business in this State upon policies issued here, and it provided, also, how and upon whom process should be served. No provision, however, was made for the service of process in the event of the withdrawal by the company of its agency, and it was to meet this contingency that sec. 30 of chap. 106 of the Act of 1876 was passed. It provides that no foreign insurance company shall do business in this State until it has filed with the Insurance Commissioner, a written stipulation, agreeing that any legal process affecting the company served on the Insurance Commissioner, or the party designated by him, or the agent specified by the company, shall have the same effect as if served on the company within the State, and if the company shall cease to maintain such agent in this State so designated, such process may be served on the Insurance Commissioner. Here, then is an express provision in the first place that the company shall agree that process should be served upon either of certain parties therein specially designated, and should the company withdraw its agency, then in that event process should be served on the Insurance Commissioner. No distinction is made between *residents and non-residents.* And had the section stopped here, no question could have arisen, we think, as to the right of the plaintiff to sue the defendant after the withdrawal of its agency, but it is supposed that this right cannot exist consistently with the remaining part of the section which says that so long as any liability of the stipulating com-

pany to any resident of this State continues, such stipulation cannot be revoked or modified, except that a new one may be substituted, &c. Here is no doubt an express reservation in behalf of resident policy-holders, but there is no reason why this reservation should be held to limit and restrict the broad and comprehensive language of the preceding part of the section, and especially in view of the policy of the previous legislation to make foreign corporations liable to suit in this State upon all policies issued in the State, whether to residents or non-residents. We think upon a fair and reasonable construction of the Act of 1876, taken in connection with the previous Acts on the subject, the complainant in this case had the right to sue the defendant corporation, even after the withdrawal of its agency, and that the process was properly served upon the Insurance Commissioner of the State. The demurrer, therefore, to the defendent's plea was properly sustained.

We come now to the merits of the defence, if there can be any merit in such a defence.

It appears that the general agent of the company, made application in person to the complainant to insure the property mentioned in the policy, and after some conversation in regard to the rates, the nature and character of the property, it was finally agreed that defendant would insure the property from loss against fire for one year, in consideration of forty dollars, which sum was paid to the agent. In this conversation the complainant expressly told the agent that the building stood upon leased ground, and the nature and character and amount paid as ground rent was fully discussed.

The agent returned to Baltimore, made out the policy and mailed it to the complainant, by whom it was received, and having entire confidence in the good faith of the agent, without reading it, he put it away with other policies in his safe. It was not until after the destruction of the property by fire, and the objection made by the defend-

ant to the payment of the loss on that ground, that the complainant found that the property was not described in the policy as leasehold property as required by the terms of the policy.

H. G. Stewart, the general agent of the defendant, admits that the complainant told him that the property was a leasehold, and stated the amount of rent paid, and that he was to describe it as such in the policy. That the mistake in regard to the description of the property was his mistake and not that of the complainant.

The law is well settled that where the general agent of a company is entrusted with the power to make and issue policies, and the insured fully and frankly discloses all facts material to the risk, and the agent in making out the policy through fraud or mistake fails to state such facts, such error or fraud on the part of the agent cannot be relied on by the company in avoidance of the policy, and a Court of equity upon application will reform the policy so as to make it express the real contract between the parties. *Ins. Company vs. Wilkinson*, 13 *Wall.*, 222; *Ins. Comp'y vs. Mahone*, 21 *Wall.*, 152; *Savings Bank vs. Charter Oak Comp'y*, 31 *Conn.*, 51; *Rowley vs. Empire Ins. Co.*, 36 *N. Y.*, 550; *Columbia Ins. Co. vs. Cooper*, 50 *Penn.*, 331; *Masters vs. Madison Ins. Co.*, 11 *Barbour*, 624; *Peck vs. New London Ins. Co.*, 22 *Conn.*, 575.

The proof in this case shows that the agent was authorized to make out the policy in question; that he was fully informed in regard to the nature and character of the property; that the omission to describe it as leasehold was his mistake, and that the complainant relying upon him to make out the policy correctly, did not discover the mistake until after the loss of the property. Under such circumstances as these, the Court was right in reforming the policy so as to make it express the contract of the parties, and in decreeing that the defendant should pay

to the complainant the amount to which the proof shows he was clearly entitled under it.

For these reasons the order of March 14th, 1879, sustaining the demurrer to the defendant's plea, and the final decree passed in this case will be affirmed.

*Order and decree*
*affirmed.*

(Decided 30th June, 1880.)