ALICE C. BABCOCK v. BANCAMERICA-BLAIR
CORPORATION AND ANOTHER.[1]

May 15, 1942.

No. 33,139.

[1]Reported in 4 N. W. (2d) 89.

*Leonard, Street & Deinard* and *Hyman Edelman,* for appellant.

*Fletcher, Dorsey, Barker, Colman & Barber, David E. Bronson,* and *Henry Halladay,* for Bancamerica-Blair Corporation, a New York corporation (now Blair & Co., Inc.), respondent.

HOLT, JUSTICE.

The defendant, a New York corporation, now Blair & Co., Inc., appeared specially to object to the jurisdiction of the court and to move the court for an order quashing and setting aside the pretended service of summons and complaint upon said defendant on June 8, 1939, by delivery of copies thereof to the deputy commissioner of securities of the state of Minnesota, and on June 16, 1939, by delivery of copies thereof to the chief clerk of the corporation division in the office of the secretary of state. From the order granting the motion, plaintiff appeals.

The action is to rescind the sale of securities purchased in 1929 by plaintiff through the defendant Delaware corporation, which is alleged to have been a sales agency and subsidiary of respondent, entirely controlled and directed by respondent. The complaint avers that plaintiff disposed of said securities on the market in 1930 without knowing that they had not been registered as required by the blue sky law of this state; and judgment is asked for the purchase price paid less the amount received from the sale. There are sweeping allegations of fraud, but the real ground of rescission is that the securities were not registered by the securities commission. These facts were stipulated for the purposes of the motion to set aside and quash the pretended service of summons on respondent (the service on the defendant Delaware corporation is not questioned): Between May 1929 and October 1931, respondent was transacting a securities business within this state; that it never applied for or received a license to do business as a foreign corporation within this state or appointed a resident

process agent within this state; that respondent never applied for or received a license to do business as a broker, dealer, agent, or otherwise under the Minnesota blue sky law, nor obtained a registration of securities thereunder, nor appointed the chairman of the securities commission, or his successor, as its process agent; that the securities referred to in the complaint as being sold to plaintiff, if the same required registration, were not registered for sale within this state by respondent or anyone else; and that respondent ceased to transact any business in this state in October 1931, and thereupon left the state without filing a certificate of withdrawal or designating the secretary of state as its statutory process agent; and respondent has not done business in Minnesota since October 1931.

In Garber v. Bancamerica-Blair Corp. 205 Minn. 275, 285 N. W. 723, it was unsuccessfully contended that jurisdiction of respondent was obtained by service of summons on its codefendant, the Delaware corporation. So on this appeal no attention need be given to the allegations in the complaint as to the connection between the two defendants with reference to the securities herein involved.

We may also eliminate the attempted service of the summons by handing to and leaving copies thereof with the secretary of state or his deputy, for Mason St. 1927, §§ 7493 and 7494, was expressly repealed by the foreign corporation act, L. 1935, c. 200. Section 27 thereof repeals said sections, "reserving to the state, however, all rights to recover fines for violations thereof occurring prior to the effective date of this section and reserving all rights of parties to any action pending in this state at the effective date of this section." By § 30 of that chapter, the effective date of the quoted § 27 was fixed as of March 1, 1936. (Mason St. 1940 Supp. §§ 7495-27 and 7495-30.) Thus almost one year was given plaintiff to come in under §§ 7493 and 7494. The action was not started until 1939. Kozisek v. Brigham, 169 Minn. 57, 210 N. W. 622, 49 A. L. R. 1260, is decisive against plaintiff. Moreover, plaintiff virtually concedes that § 7493 is of no avail, but claims that respondent is

estopped to deny that it did not appoint the secretary of state its irrevocable process.agent. We consider the claim untenable. The pertinent provisions of § 7494, in force when respondent withdrew from the state, read:

"Any foreign corporation licensed to do business in this state may withdraw therefrom upon filing with the secretary of state a duly certified copy of a resolution duly passed by unanimous vote of its board of directors or corresponding board, or by majority vote of its stockholders, directing such withdrawal and irrevocably appointing the secretary of State of Minnesota and his successors in authority the agent of said withdrawing corporation for service of legal process and other notices upon it in any action or proceeding of any nature or kind arising out of or involving anything done or omitted by said foreign corporation in this state while licensed to do business here. Such appointment of said agent shall continue in force as long as any cause of action, right, or claim against said corporation survives in this state; and service upon such agent shall be deemed personal service upon the foreign corporation so appointing him."

It is to be noted that the appointment is permissive, not mandatory, and relates to foreign corporations licensed to do business in this state and whose board of directors unanimously resolve to withdraw, or whose stockholders by a majority vote so decide. It is also to be noted that there is no provision requiring the secretary of state to notify the corporation of service of process or notice. And, as above intimated, what to us appears more conclusive against the right of plaintiff to invoke the use of this repealed § 7494 to acquire jurisdiction is that no effort was made to do so under the provision mentioned in L. 1935, c. 200.

Plaintiff's appeal must therefore stand or fall upon the service of the summons by handing to and leaving copies thereof with the deputy commissioner of securities on June 8, 1939, under the provisions of Mason St. 1940 Supp. § 3996-11 (L. 1925, c. 192, § 11, as amended by L. 1933, c. 408, § 12), reading:

"Every non-resident person shall, before having any securities registered or being licensed as a broker, dealer, or agent, appoint the 'Commissioner of Securities,' and his successor in office, his attorney upon whom process may be served in any action or proceeding against such person or in which such person may be a party, in relation to or involving any transaction covered by this Act, which appointment shall be irrevocable. Service upon such attorney shall be as valid and binding as if due and personal service had been made upon such person. Such service shall be by duplicate copies, one of which shall be filed in the office of the commission and the other immediately forwarded by registered mail to the person so served at the address on file with the commission. Provided, that any such appointment shall become effective upon the registration of the securities or the issuance of the license in connection with which such appointment was filed."

The quoted section, to be sure, requires the nonresident party to appoint the securities commissioner his process agent before he is allowed to register any securities and before license is issued to deal in such securities, but it does not state that a sale of unregistered securities shall be deemed equivalent to appointing the commissioner as his process agent. This is emphasized by the last sentence of the section, that an appointment even if made shall become effective "upon the registration of securities or the issuance of the license in connection with which such appointment was filed." Respondent never filed an appointment, nor registered these or any securities, nor even applied for a license to deal in securities. In all statutory provisions for obtaining jurisdiction of foreign corporations not doing business in the state, consideration must be given to the due process requirement of U. S. Const. Amend. XIV, as construed by the federal courts. Where a foreign corporation is transacting business in the state when jurisdiction by service of summons is attempted, no difficulty is found, provided the service is made in the manner prescribed by the statute. But here it is stipulated that respondent has not transacted any business in the state since October 1931. Even the

full faith and credit which the federal constitution, art. IV, § 1, requires the courts of one state to give to judgments rendered in another state goes for naught if facts show that the judgment involved was entered against a defaulting foreign corporation upon service of summons on a statutory process agent when the corporation was not transacting any business in the state and the cause of action was upon a contract entered and to be performed in the state of the corporation's domicile. Old Wayne Mut. L. Assn. v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. ed. 345.

We do not intend to refer to the many cases cited by plaintiff relating to insurance contracts where the foreign corporation, while its policy is in force, continues to come into the state of the insured's residence to collect the premiums as they fall due. Nor need we determine the merit of respondent's classification of the various statutes designed to obtain jurisdiction of foreign corporations. In the absence of a statute declaring that a foreign corporation by coming into the state to transact business thereby automatically appoints the statutory named process agent, jurisdiction may not be obtained of the foreign corporation which neither is transacting business in the state at the time of the attempted service of summons nor has appointed a process agent. Our decisions have thus construed the statutes enacted prior to 1941 for the purpose of obtaining jurisdiction of foreign corporations. Kulberg v. Fraternal Union of America, 131 Minn. 131, 154 N. W. 748; Wold v. Commercial Men's Assn. 136 Minn. 380, 162 N. W. 461; Massey S. S. Co. v. Norske Lloyd Ins. Co. Ltd. 153 Minn. 136, 189 N. W. 714; American L. & I. Co. v. Boraas, 156 Minn. 431, 195 N. W. 271, 272. In the last cited case Mr. Chief Justice Brown stated:

"A different rule is applied where the foreign corporation enters the state for the transaction of business without a compliance with its laws, subsequently withdrawing altogether. In a case of that kind, the presence of the corporation being unlawful, we have held that a showing must be made that the company was

doing business in the state at the time of the commencement of the suit. Louis F. Dow Co. v. First Nat. Bank, 153 Minn. 19, 189 N. W. 653."

Plaintiff contends that since respondent entered this state and transacted business in unregistered securities in violation of the blue sky law it is estopped to deny the appointment of the securities commissioner its process agent. To support the contention, plaintiff cites and relies on Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. ed. 1091; Consolidated Flour Mills Co. v. Muegge, 127 Okl. 295, 260 P. 745; Frazier v. Steel & Tube Co. 101 W. Va. 327, 132 S. E. 723, 45 A. L. R. 1442. The Hess case held that the Massachusetts statute relating to the operation of motor vehicles by nonresidents upon its highways, G. L. Mass. c. 90, § 3A, as added by St. 1923, c. 431, § 2, which provides that by the act of so entering and operating it "shall be deemed equivalent to an appointment by such nonresident of the registrar or his successor in office, to be his true and lawful attorney upon whom may be served all lawful processes in any action or proceeding against him, growing out of any accident or collision in which said nonresident may be involved while operating a motor vehicle on such a way," etc., did not violate the due process requirement U. S. Const. Amend. XIV. It is to be observed that this statute automatically appoints the process agent of the nonresident the moment his vehicle makes use of the state's highways. Of similar import is Oklahoma St. 1921, § 5442, 18 O. S. 1941, § 472, under which jurisdiction was sought in the Muegge case, reversed, however, in 278 U. S. 559, 49 S. Ct. 17, 73 L. ed. 505, an authority of Wuchter v. Pizzutti, 276 U. S. 13, 48 S. Ct. 259, 72 L. ed. 446, 57 A. L. R. 1230 (a similar statute of New Jersey), on the ground that the statute did not provide adequate notice to the nonresident and opportunity to defend. In the Frazier case, the West Virginia Code, c. 54, § 24a, provided:

"The auditor of this state shall be, and he is hereby constituted the attorney in fact for and on behalf of every foreign corporation

doing business in this state, and of every nonresident domestic corporation, with authority to accept service of process on behalf of and upon whom service of process may be made in this state for and against such corporation. No act of such corporation appointing the auditor such attorney in fact shall be necessary."

It is clear that every statute involved in the cited decisions, designated to secure jurisdiction over foreign corporations and of nonresidents, declares and states in no uncertain terms that by the fact of their mere entry into the state to transact business the process agent named in the statute becomes automatically their agent or attorney in fact to accept service of process in any action brought involving such business. It is obvious that there is quite a difference between those statutes and § 3996-11 of our code. Of course, the additions to § 3996-11 by L. 1941, c. 547, § 11, cannot in reason apply to respondent's entry to transact business in securities in 1929.

In Sivertsen v. Bancamerica-Blair Corp. (D. C.) 43 F. Supp. 233 (the same defendants as here, the parties represented by the same attorneys as here, the same sort of action, and like service of summons as here), Judge Nordbye of the federal court, in an exhaustive opinion, set aside the service of summons. It is true that the federal courts follow the construction placed on a local statute by the courts of the enacting state; but we think Judge Nordbye correctly construed our statutes in force and effect at the time of the attempted service of the summons on respondent.

Plaintiff also claims support for the contention that, having entered this state to transact the business of dealing in securities without compliance with our blue sky law, it thereby appointed the process agent therein designated, in the decision of Yoder v. Nu-Enamel Corp. 140 Neb. 585, 300 N. W. 840, overruling Schwabe v. American Rural Credits Assn. 104 Neb. 46, 175 N. W. 673. In our opinion, the Nebraska statute, Comp. St. Nebraska, 1929, § 24-1201, may properly be construed as automatically appointing a designated process agent for a foreign corporation entering the

state, and there transacting business in violation or noncompliance with its laws.

The order is affirmed.

PETERSON, JUSTICE (dissenting).

I think that the service of process on the commissioner of securities was good upon the grounds that defendant is estopped to deny that it appointed the state officer as its agent for the service of process and that its withdrawal from the state did not render the appointment ineffective.

The purpose of the blue sky law (Mason St. 1927, §§ 3996-1 to 3996-28) is to suppress the fraudulent sale of securities. An elaborate administrative process is set up to prevent and to detect fraud by requiring registration of securities, licensing of dealers and agents, and revocations of registrations and licenses. The law imposes a duty on the securities commissioner to supervise the entire business. It applies equally to residents and nonresidents. Drastic criminal penalties for violations are imposed. Civil remedies for defrauded purchasers are provided. Notwithstanding all these provisions, the legislature was not naive enough to believe that it could prevent or had entirely prevented the fraudulent sale of securities. It took notice, as it could hardly avoid doing, of the very substantial extent to which migratory vendors of fraudulent securities carried on their traffic within our borders, entering the state to make fraudulent sales to our citizens and then withdrawing therefrom. Because our citizens had to pursue them in other forums, such dealers enjoyed substantial, if not total, immunity from all legal responsibility. See B. & O. R. Co. v. Harris, 12 Wall. (U. S.) 65, 20 L. ed. 354. Section 3996-11 was adopted to afford to our citizens a remedy in our courts against nonresident dealers in fraudulent securities by exacting from all nonresident dealers in securities as a condition precedent to any sale within the state the irrevocable appointment of the commissioner of securities as the seller's agent for service of process in cases arising out of transactions occurring within the state.

The legislature must be deemed to have enacted the provisions of § 3996-11 for the appointment of the securities commissioner by nonresidents as process agent with the rule in mind that where a nonresident withholds actual consent to jurisdiction by failing to file a required appointment he will be charged with the same consequences as if he had consented in case he enters the state and exercises the privilege of doing business for which such an appointment is a condition. Where the consent is given we have a true contract; where it is not given we have by operation of law the rights which the contract, if executed, would have given. See Bagdon v. Philadelphia & R. C. & I. Co. 217 N. Y. 432, 111 N. E. 1075, L. R. A. 1916F, 407, Ann. Cas. 1918A, 389. It would be a singular evidence of the state's impotency to execute its settled policy if the rule were otherwise.

The fact, stated in the majority opinion, that the statute "requires the nonresident party to appoint the securities commissioner his process agent before he is allowed to register any securities and before license is issued to deal in such securities" is all that is required, where such party enters the state and sells securities, to raise an estoppel on the part of the seller to deny the statutory appointment. A corporation "cannot migrate, but may exercise its authority in a foreign territory upon such conditions as may be prescribed by the law of the place. One of these conditions may be that it shall consent to be sued there. *If it do business there it will be presumed to have assented and will be bound accordingly.*" (Italics supplied.) B. & O. R. Co. v. Harris, 12 Wall. (U. S.) 65, 81, 20 L. ed. 354, *supra*. In numerous decisions we have expressed adherence to that rule and held that where a foreign corporation entered the state and transacted business here, it in effect consented to the appointment of the statutory agent for service of process. The rule has been applied in numerous cases where foreign insurance companies did business here without filing a written appointment of the commissioner of insurance as agent to receive service of process. Massey S. S. Co. v. Norske Lloyd Ins. Co. Ltd. 153 Minn. 136, 189 N. W. 714; Braun-

stein v. Fraternal Union of America, 133 Minn. 8, 157 N. W. 721; Kulberg v. Fraternal Union of America, 131 Minn. 131, 154 N. W. 748, 750. In the Kulberg case, the defendant took over the business of another association and continued to do business in the state without complying with the statute. We said:

"Upon so assuming the liabilities of the older association, which necessitated the transaction of the business connected therewith in this state, defendant was under duty to comply with our statutes, and having failed to do so, is estopped from denying the jurisdiction of our courts if it continued the transaction of its business in this state."

The Kulberg case cites with approval Ehrman v. Teutonia Ins. Co. 1 F. 471, 476, 1 McCrary (D. Ct. Ark.) 123, where Caldwell, Cir. J., in speaking of the failure of a foreign insurance company to file with the state auditor an appointment of that officer as its process agent as required by the Arkansas statute, said: "That the stipulation was not, in fact, filed with the auditor, is of no consequence if the company has done those things which imposed upon it the obligation and duty to file it." The estoppel has the same effect as if a formal appointment of the securities commissioner had been made by defendant.

True, in each of our cases cited above the company was doing business in the state and had not withdrawn, as here, at the time of service upon the state officer; but that circumstance is entirely irrelevant, as will be shown later.

To sum up on this phase of the case, the rule is as stated in 23 Am. Jur., Foreign Corporations, § 495:

"The general rule is that a foreign corporation tacitly submits itself, when it voluntarily enters the state and engages in business there, to the valid laws of such state and to the jurisdiction and process of its courts to the extent required by such laws. Amenability of the corporation to suit and judicial process in respect of causes of action arising out of the business done in the state follows as a legal consequence of doing business therein, if the

law of the state makes provision therefor, either as an express condition upon which the corporation can legally transact its corporate business there or as a condition implied from provision made for service of process upon its agents in the state or upon an official designated for the purpose by statute."

If defendant had filed a formal appointment of the commissioner of securities as its process agent before it withdrew from the state, the appointment would have continued in effect after defendant's withdrawal from the state. Magoffin v. Mutual Res. Fund L. Assn. 87 Minn. 260, 91 N. W. 1115, 94 A. S. R. 699. The rule is not different where the appointment arises from an estoppel rather than a writing. In Old Wayne Mut. L. Assn. v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 240, 51 L. ed. 345, a foreign insurance company which did business in Pennsylvania without complying with the statute by naming the designated state officer as its process agent for business done in that state was sued in Pennsylvania after it had withdrawn from that state on a policy issued in the state of Indiana and which was a transaction occurring in the last named state. Process was served on the state officer. While the service was held invalid, the court was very careful to bottom its decision upon the ground that jurisdiction failed not because the corporation had withdrawn from the state, but because the transaction sued on was not within the terms of the statute which limited jurisdiction to cases of transactions occurring within the state. With respect to the point of a non-complying foreign corporation exercising the privilege of doing business in the state, Mr. Justice Harlan, speaking for the court, said:

"It is equally true that if an insurance corporation of another State transacts business in Pennsylvania without complying with its provisions it will be deemed to have assented to any valid terms prescribed by that Commonwealth as a condition of its right to do business there; and it will be estopped to say that it had not done what it should have done in order that it might

lawfully enter that Commonwealth and there exert its corporate powers."

This holding has been cited with approval in later cases. Minnesota Commercial Men's Assn. v. Benn, 261 U. S. 140, 43 S. Ct. 293, 67 L. ed. 573; Pennsylvania F. Ins. Co. v. Gold Issue Min. Co. 243 U. S. 93, 37 S. Ct. 344, 61 L. ed. 610; Simon v. Southern R. Co. 236 U. S. 115, 35 S. Ct. 255, 59 L. ed. 492.

Where the rule is recognized that a noncomplying foreign corporation doing business in the state is estopped to deny the appointment of the statutory agent for service of process, service of process may be made on such agent and jurisdiction over the corporation acquired after it has withdrawn from the state. The withdrawal of the corporation from the state in such a case is just as ineffective to revoke the appointment of the statutory agent for service of process arising from estoppel as where the appointment was made in express terms by a writing. Darling Stores Corp. v. Young Realty Co. (8 Cir.) 121 F. (2d) 112; Colorado Iron Works v. Sierra Grande Min. Co. 15 Colo. 499, 25 P. 325, 22 A. S. R. 433; Ben Franklin Ins. Co. v. Gillett, 54 Md. 212; Yoder v. Nu-Enamel Corp. 140 Neb. 585, 300 N. W. 840; Consolidated Flour Mills Co. v. Muegge, 127 Okl. 295, 260 P. 745, reversed, 278 U. S. 559, 49 S. Ct. 17, 73 L. ed. 505, on the ground only that the local statute did not provide for notice to the corporation; 18 Fletcher Cyc. Corp. § 8762. In 23 Am. Jur., Foreign Corporations, § 500, the text states the rule as follows:

"A foreign corporation which does business in a state the law of which provides that it shall be amenable to suit on causes of action arising out of the business done in the state, by service of process upon some person designated by statute, such as a state officer, cannot escape the jurisdiction of the local courts in such a suit by ceasing to do business in the state and withdrawing therefrom, and this is the general rule even though it was required to designate such person as its agent for the purpose and

failed to comply with the requirement or to consent in any manner to the statutory provisions."

In Proposed Final Draft, Restatement, Judgments (Part I, 3-31-42) § 219, *d,* states the rule:

"*d. Ceasing to do business.* A court may acquire jurisdiction over a non-resident who has done business within the State but has ceased to do business there at the time when the action is brought, as to causes of action arising out of the business done within the State, if at the time when the cause of action arose a statute of the State provided that non-residents by doing business there became subject to the jurisdiction of the State to that extent."

True, the statute of Iowa considered in the Darling Stores Corporation case provided that in case of failure to comply service might be made on the state officer as the statutory agent for service of process. But that circumstance was not a factor in decision. The court based its decision on estoppel to deny compliance and the binding effect of the estoppel as against the subsequent withdrawal from the state. The court said [121 F. (2d) 116]:

"In the case before us the fact of doing business in the state, and the necessity of compliance with the Iowa statute, was admitted by the application of Darling Shops, Inc., for, and its receipt and acceptance of, the permit granted. It could not absolve itself of the obligation assumed by withdrawal from the state after its breach of that obligation."

In the other cases cited the statute did not prescribe the effect of noncompliance.

The state's power to regulate the sale of securities, like that of regulating the use of highways, extends to residents and nonresidents, individual and corporate. An individual who enters the state and sells securities in violation of the state blue sky law thereby submits himself to the state's jurisdiction according to its

statutes. For example, where the statute so provided, service of process might be made on him by registered mail after he has left the state. Stevens v. Television, Inc. 111 N. J. Eq. 306, 162 A. 248.

It is not important that our statute does not provide, as some statutes do, that doing business in the state by a foreign corporation shall be deemed a designation of the state officer as the statutory agent for service of process. Our decisions have supplied such a consequence in such cases without express statutory provision to that effect. Massey S. S. Co. v. Norske Lloyd Ins. Co. Ltd. 153 Minn. 136, 189 N. W. 714, *supra;* Braunstein v. Fraternal Union of America, 133 Minn. 8, 157 N. W. 721, *supra;* Kulberg v. Fraternal Union of America, 131 Minn. 131, 154 N. W. 748, *supra.*

Decisions in other jurisdictions, where the statutes do not prescribe the consequence of noncompliance, like our own, attach such a consequence to doing business in the state without compliance. Morris & Co. v. Skandinavia Ins. Co. (7 Cir.) 81 F. (2d) 346; Diamond Plate Glass Co. v. Minneapolis Mut. F. Ins. Co. (C. C.) 55 F. 27; Ehrman v. Teutonia Ins. Co. (D. C.) 1 F. 471, *supra;* North American Union v. Oliphint, 141 Ark. 346, 217 S. W. 1, and the other cases cited *supra.*

The majority relies principally on our decisions holding that, where jurisdiction is based upon presence of the corporation in the state, it must appear that the corporation was actually doing business in the state through its agents at the time of service. In this class are cases like American L. & I. Co. v. Boraas, 156 Minn. 431, 195 N. W. 271, from which the majority quotes, and Louis F. Dow Co. v. First Nat. Bank, 153 Minn. 19, 189 N. W. 653. There is a fundamental distinction, as we pointed out in Garber v. Bancamerica-Blair Corp. 205 Minn. 275, 285 N. W. 723, between service based on corporate presence in the state and service based on consent to be sued by service of process on a designated agent. In the former case, the presence of the corporation in the state by its officers and agents must exist as a fact at the time of service; otherwise there is no corporate pres-

ence. In the case of consent the fact of consent at some time is all that is required. Once given, it remains effective regardless of whether or not the corporation afterwards withdraws from the state. Magoffin v. Mutual Res. Fund L. Assn. 87 Minn. 260, 91 N. W. 1115, 94 A. S. R. 699, *supra*.

It is entirely unimportant whether or not a corporation which has consented to service of process on the statutory agent for service of process has withdrawn before service of process. In fact, the consent is exacted from the corporation as the condition of doing business here so that service may be had upon it after it has withdrawn from the state. Magoffin v. Mutual Res. Fund L. Assn. 87 Minn. 260, 91 N. W. 1115, 94 A. S. R. 699, *supra*. Where the corporation is estopped to deny compliance, its subsequent withdrawal from the state does not prevent jurisdiction upon the ground of consent, as the authorities which have been cited demonstrate.

No serious question of due process is raised by the provisions of § 3996-11. The exaction, as a matter of law, of consent by a foreign corporation to the appointment of the commissioner of securities as agent for service of process as a condition of doing business within the state is a constitutional exercise of the state's police power. 23 Am. Jur., Foreign Corporations, § 495, note 9. Where the performance of an act within the state by a nonresident such as using of its highways or engaging in a business such as the sale of securities is subject to state regulation, the doing of such acts or the transaction of such business may be conditioned by the appointment by the nonresident of a state officer as process agent. Seitz v. Claybourne, 181 Minn. 4, 231 N. W. 714.; Schilling v. Odlebak, 177 Minn. 90, 224 N. W. 694; Stevens v. Television, Inc. 111 N. J. Eq. 306, 162 A. 248, *supra*. It makes no difference whether the appointment of the process agent designated by statute is by express consent, as by a writing, or is one resulting from doing of an act which by operation of law gives rise to such a result. "The difference between the formal and implied appointment is not substantial so far as concerns the ap-

plication of the due process clause of the Fourteenth Amendment." Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 633, 71 L. ed. 1091. The procedural requirements of due process are satisfied by the provisions of the statute imposing the duty on the commissioner of securities to immediately forward by registered mail to the person served a duplicate of the papers served upon the commissioner. State of Washington ex rel. Bond & G. & T. Inc. v. Superior Ct. 289 U. S. 361, 53 S. Ct. 624, 77 L. ed. 1256, 89 A. L. R. 653. Parenthetically, it is in point to observe that the cited case sustains the view that where a corporation doing business in the state does not comply with the provisions for the appointment of a state officer as agent for the service of process, jurisdiction of the corporation may be acquired by service of process upon such officer after the corporation has withdrawn from the state, for in that case it was held that, since a corporation's entry into a state may be conditioned, its withdrawal therefrom may be conditioned also, and that, where the condition of withdrawal is the maintenance within the state of an agent for service of its choosing or the appointment of the secretary of state as the agent for service, the withdrawal of the corporation and its appointed agent estops it to deny the appointment of the secretary of state as its agent for service notwithstanding such estoppel did not arise until after the corporation has withdrawn from the state. Service of process on the secretary of state after the corporation's withdrawal from the state was held good. Here, the estoppel arose while defendant was present in the state.

According to my view, a nonresident's entry into the state and his selling of securities therein without having designated the commissioner of securities as his agent for service of process as required by § 3996-11 by operation of plain rules of law constitutes the commissioner the nonresident's agent for service of process. Such was the rule when L. 1941, c. 547, was enacted. Hence that statute did not change the existing law. If anything, it simply made more explicit what already was plain enough. The 1941 statute undoubtedly was occasioned by the decision of

the federal court in Sivertsen v. Bancamerica-Blair Corp. (D. C.) 43 F. Supp. 233, construing § 3996-11 contrary to the views expressed above. It is clear to me, and I say it with all due deference, that the federal court erred. The legislature evidently did not want the error repeated in subsequent cases. The purpose of the 1941 statute was to make the legislative intention more clear. There is no reason why a statute should not be so plain that no one can mistake its meaning.

Consequently, I think the court below erred and should be reversed.

HILTON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Peterson.

MR. CHIEF JUSTICE GALLAGHER, absent on account of illness, took no part in the consideration or decision of this case.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

